HAWTHORNE, Justice.
Plaintiffs in this action seek to recover judgment for $14,000 against the defendant Robert F. Roberts as liquidated damages for failure of a sublessee, Waytex Oil. Corporation, to drill four wells under the-provisions of two subleases, one of which' we shall designate as the Mixon lease and' the other as the Maxwell lease. After trial on the merits there was judgment dismissing the suit, and plaintiffs have appealed.
The two subleases were acquired by Waytex Oil Corporation from plaintiffs, the effective date of the acquisitions being January 1, 1951. Each of these leases covered. 40 acres of property in LaSalle Parish,. Louisiana. According to these instruments, on the Mixon lease there were three producing wells and on the Maxwell lease two.
The Mixon lease recites:
“ ⅜ * * Grantors do reserve unto themselves and the said Grantee does grant and convey unto them as part of the consideration of this assignment of said oil, gas and mineral lease, a ¾⅛ of ⅞⅛ oil payment interest until $30,000 has been, paid to the Grantors herein, free of all costs except severance taxes, * * * then a permanent %4ths of J-lth of %hs overriding royalty interest * * *.
“That said Grantors herein reserve the privilege of a first mortgage on the leasehold estate and equipment now situated oni said lease hereinabove described until the total sum of $30,000 has been paid out o£ the described ¼⅛ of %ths of all the oil, gas or other production from said lease, * * * and that this mortgage shall, carry no interest but is payable from the described oil interest,”
*160 The consideration in the Maxwell lease was likewise an oil payment interest until the sum of $12,000 had been paid to the grantors and thereafter a permanent overriding royalty interest; and the grantors in this lease likewise reserved the privilege of a first mortgage on the leasehold estate and the equipment situated on the leased premises until the total sum stipulated as oil payments had been paid.
Immediately after stating the consideration for the sublease as quoted above, the Mixon lease provides:
“That said Grantee [Waytex Oil Corporation], and Robert F. Roberts, individually, shall execute this instrument, evidencing personal responsibility on this indebtedness.”
The Maxwell lease provides:
“Said Grantee [Waytex Oil Corporation] and Robert F. Roberts, individually, shall execute this instrument evidencing responsibility of the indebtedness of the lease herein created.”
Immediately following the above quoted provision the Mixon lease provides in paragraph 3:
“That should Grantee elect to abandon this lease in its entirety, then and in that event said Grantee shall have the right to pay a cash sum being the difference in the amount owing on this indebtedness, and obtain the full right and privilege to all equipment situated on said lease, or may elect to allow the Grantors to resume possession of the lease and apply the salvage value of the equipment on said lease towards the existing indebtedness and pay the cash difference. * * * ”
A similar provision is found in the Maxwell lease.
Thereafter each sublease stipulates that the grantee agrees to commence the drilling of two wells on or before January 1, 1953, and that upon the failure of Waytex to commence this drilling or tests on or .before January 1, 1953, Waytex shall pay to grantors liquidated damages in the sum of $7,000. It is conceded that Waytex never drilled the wells, and plaintiffs here seek to recover from defendant Roberts the $14,000 as liquidated damages.
Sometime before August 22, 1952, the sublessee Waytex Oil Corporation was placed in bankruptcy, and on that date plaintiffs filed a proof of claim in the bankruptcy proceeding, contending that the subleases here involved were null and void in toto for failure of consideration and because the subleases had not been operated in a workmanlike manner pursuant to their provisions. This proof of claim then contended that in the event the subleases were found to be valid, the bankruptcy court should recognize claimants' vendor’s lien and mortgage on each of the described leases as secured claims for the original indebtedness less credits for payments made. As to the Mixon lease these plaintiffs contended in the proof of claim filed by them that the indebtedness evidenced by the sublease, mortgage, and vendor’s lien was $30,000 (the amount of the oil payments) less certain credits, or a balance in excess of $25,000; that to this balance must be added the obligation to drill two wells, and should the trustee elect not to drill these wells, there must be added liquidated damages in the amount of $7,000, making the total indebtedness in excess of $32,000. The proof of claim with reference to the Maxwell lease was identical except the amount claimed to be due thereunder was $12,000 (the amount of the oil payments) less certain credits, or a balance in excess of $11,000, and they claimed that to this sum there must be added $7,000 as liquidated damages, making the total indebtedness a sum in excess of $18,000.
After certain proceedings in the bankruptcy court the referee in bankruptcy ordered that the leases in question, together with certain property situated on the leased premises, be adjudicated to plaintiffs in recognition of their vendor’s liens, privi *161 leges, and mortgages, and that this adjudication was “to operate as satisfaction of adjudicatees’ secured claims against the bankrupt’s estate’’. Pursuant to this order the trustee in bankruptcy by instrument dated November 10, 1952, effective November 1, 1952, transferred to the plaintiffs (together with other properties) all right, title and interest of the bankrupt estate, Waytex, in the Mixon lease and the Maxwell lease and the derrick, drilling equipment, and other property situated on the leased premises. This instrument recites: “ * * * this adjudication and sale is made in full satisfaction of the mortgages and secured claims referred to above and filed in these proceedings.”
After plaintiffs became vested with all of the title previously vested in the bankrupt to the leases here in question together with the drilling equipment used in the operation of the leases, they subleased both the Mixon lease and the Maxwell lease, together with other property, to one Bert R. Arbogast. According to this instrument Arbogast paid the plaintiffs $7,000 in cash, agreed to make oil payments for a large sum, and also obligated himself to drill four wells on the premises subleased. Although this instrument was not executed until after January 1, 1953, the last date on which Waytex was to commence the drilling of the wells in question, according to its provisions it was to be effective November 1, 1952, the same date on which the transfer from the trustee to these plaintiffs became effective.
Plaintiffs take the position that the defendant in his answer has admitted that he guaranteed the performance of the drilling obligations or the payment of the liquidated damages. We do not so view his answer. It is true that he admits the execution of the instrument and its terms and provisions, but he specifically denies plaintiffs’ legal conclusions. Plaintiffs alleged in Paragraph 12 of their petition:
“That, in spite of amicable demand, the drilling of the said two wells was not commenced on or before January 1, 1953, and there was not and has never been compliance with this obligation; and, in spite of amicable demand, there was not, and has never been, compliance with the said obligation to pay assignors the sum specified as liquidated damages.”
In answer to this allegation defendant said:
“For lack of information, defendant denies the allegations of Article 12 of plaintiffs’ original petition, except that he admits that he has not paid plaintiffs any sum whatsoever for the reason that he owes plaintiffs nothing under the terms of the instrument sued on(Italics ours.)
As we view the matter, the first question we are required to answer is whether defendant Roberts bound himself by the terms of the two subleases to pay liquidated damages if the wells were not timely commenced by Waytex.
It is first to be observed that the defendant Roberts is not named as a grantee in either one of these instruments, although both were signed by him individually. Both instruments, after providing for an oil payment interest until $30,000 had been paid in one and $12,000 in the other, then provide for the reservation of the privilege of first mortgages on the leasehold estate and equipment situated on the properties covered by the leases until the total sum of $30,000 in one and $12,000 in the other had been paid. Immediately after these provisions we find the provisions upon which plaintiffs rely for the liability of Roberts, and which we quote again for emphasis:
“That said Grantee, and Robert F. Roberts, individually, shall execute this instrument, evidencing personal responsibility on this indebtedness.” (Mixon lease.)
“Said Grantee and Robert F. Roberts, individually, shall execute this instrument evidencing responsibility of the indebtedness of the lease herein created.” (Maxwell lease.)
*162 The phrases “evidencing personal responsibility on this indebtedness” and “evidencing responsibility of the indebtedness of the lease herein created” plainly refer to the payment of $30,000 to be made in oil in one sublease and $12,000 in the other, the payment of which sums was secured by mortgages on the leasehold premises. This is made abundantly clear by an examination of Paragraph 3 of the Mixon lease, quoted above, and the corresponding paragraph of the Maxwell lease. In each of those paragraphs it is provided that if the grantee elects to abandon the lease in its entirety, it would have the right to pay in cash the difference of the amount owing “on this indebtedness” and obtain the full right and privilege to all equipment situated on the lease, or the grantee may elect to permit grantors to resume possession of the lease and apply the salvage value of the equipment on the lease toward the existing indebtedness and pay the cash difference. In other words, this paragraph makes it very clear what was meant by the individual responsibility of Roberts “on this indebtedness”, and shows that “this indebtedness” refers, and could only refer, to the indebtedness of $30,000 in one sublease and of $12,000 in the other.
It is to be observed that the grantee bound itself to commence the drilling of the wells in question on or before January 1, 1953, or pay liquidated damages. However, under the provisions of Paragraph 3 of the Mixon lease, quoted above, and the corresponding paragraph of the Maxwell lease, in the event it saw fit to abandon the leases in their entirety before that date or to allow grantors to resume possession thereof, it was only required to pay in cash the balance due of $30,000 and $12,000 respectively, which was “the existing indebtedness”. Roberts signed the documents in question evidencing personal responsibility “on this indebtedness”, and under the plain provisions of these documents did not make himself liable for liquidated damages which might result in the future if Waytex failed to commence the wells in question in the event it had not abandoned the leases or permitted grantors to resume possession pri- or to that date. In other words, as we view the instruments, defendant Roberts assumed no individual responsibility for failure of Waytex to commence drilling the wells.
Defendant Roberts pleads numerous special defenses to plaintiffs’ suit, among these being payment. This special defense of payment is based on proceedings in the Waytex bankruptcy proceedings. Defendant contends that the adjudication or sale by the trustee of the leases to plaintiffs, when considered with their proof of claim, satisfied and extinguished the debt and constituted payment of the amount which plaintiffs here claim.
 We are mindful of the rule in this state that a plea of payment admits the original existence of the debt sued on. Art. 2133 La.Civ.Code; Landry v. Delas, 25 La.Ann. 181; Sabine Lumber Co. v. Trumbull, 158 La. 621, 104 So. 476; Pitre v. Bourg, La.App., 77 So.2d 113, and cases there cited. However, we do not think this rule has any application to the facts of this case for the reason that defendant is not pleading that he has paid all or any part of the debt. He simply pleads that the adjudication in the Waytex bankruptcy by the trustee to these plaintiffs constituted a complete and full satisfaction of the debt, which he says is payment. Moreover, this court has held that a plea of payment relates specifically to transactions between plaintiff and defendant, and exclusively to sums paid by the latter in discharge or part payment of plaintiff’s demand. Davis v. Davis, 17 La. 259; Blum v. Bidwell and Reddington, 20 La.Ann. 43; see Ferguson v. Courtin, La.App., 170 So. 795.
The judgment is affirmed at plaintiffs-appellants’ costs.
SIMON, J., absent.